**Deborah M. NAGLAK, Plaintiff,**

v.

**PENNSYLVANIA STATE UNIVERSITY, et al., Defendants.**

No. CV–89–1744.

United States District Court, M.D. Pennsylvania.

July 31, 1990.

**20**

Daniel Silverman, Philadelphia, Pa., for plaintiff.

David E. Lehman, Stephen A. Moore, Harrisburg, Pa., Richard M. Faulkner, State College, Pa., for Charles M. Berlin, Jr., M.D., and Pennsylvania State Univ.

## MEMORANDUM

McCLURE, District Judge.

### I. *BACKGROUND*

This action was initiated by a complaint filed June 8, 1987 against defendants Cheston M. Berlin, Jr., M.D. and the Pennsylvania State University ("Penn State").[1] Plaintiff Deborah Naglak alleges that the defendants fraudulently induced her to enter into a settlement agreement terminating an action previously filed against them.[2]

In the prior action, plaintiff alleged that she had been improperly dismissed as a student from the Pennsylvania State University College of Medicine, Hershey, Pennsylvania at the end of her second year. The parties settled that action by agreeing that: (1) plaintiff would receive credit from Penn State for courses which she completed at Georgetown University; (2) that her transcript would indicate that she had successfully completed all course requirements for the first two years of medical school; (3) that the school would respond to all inquiries from third parties regarding her academic standing by supplying them with a statement stipulated by the parties. That statement provided, in relevant part:

> Thus, Miss Naglak has successfully completed the first two years of her studies at the College of Medicine. *She has requested a transfer. She is in good standing, and we approve the transfer.*

(Defendants' brief in support of motion to compel, filed April 13, 1990, Exhibit "B." Emphasis supplied.)

Plaintiff alleges, in this action, the following scenario. She asserts that defendants fraudulently induced her into signing the settlement agreement, because they led her to believe that the provisions agreed upon would allow her to continue her medical education at another school. After signing the agreement and expending much effort in attempting to transfer, she found that transfer was virtually impossible. Her principal difficulty is her inability to register for the National Board of Medical Examiners–Part I ("National Boards"). Submission of National Board scores are an absolute prerequisite for transfer to most, if not all, medical schools in the United States.

Plaintiff further contends that the defendants led her to believe that her scores on the Medical Sciences Knowledge Profile ("MSKP"), a test which she has taken, could be substituted for National Boards scores.[3] This information was not included

---

1. This action was initially filed in the United States District Court for the Eastern District of Pennsylvania (CV-87–3427) and subsequently transferred to this court.

    Plaintiff originally named additional defendants, who were dismissed from this action through a series of motions.

2. The prior action, *Naglak v. Berlin, et al.,* was initially filed in the Court of Common Pleas for Delaware County, Pennsylvania and subsequently removed to the United States District Court for the Eastern District of Pennsylvania, (E.D.Pa. 84–5428).

3. Plaintiff alleges in her second amended complaint, that the defendants:

    recommended to ... Scandone [plaintiff's counsel in the prior action] the medical science knowledge profile (MSKP) exam used for transfer of foreign students as an acceptable alternative to the part one of the National Board Exam ... (NB–1) for the plaintiff's transfer to another U.S. LCME accredited medical school, and therefore as an administrative means of transfer and of settling CA 84–5428.... Defendant Berlin did so encouraging and expecting to induce plaintiff to use

in the settlement agreement, but was, plaintiff alleges, related to her attorney, Robert Scandone, during settlement negotiations with defendants' counsel, R. Mark Faulkner, Esquire. Defendants knew and intended, plaintiff alleges, that she would rely on these assurances in agreeing to the terms of the settlement. After entering into the agreement, she learned that the MSKP scores could not be substituted for National Boards scores, that she would be unable to transfer without first taking the National Boards and, that she could not register for the National Boards unless she was currently enrolled in medical school. All of this placed her in a "Catch-22" situation, to which it seemed the only possible solution was for her to re-enroll temporarily as a Penn State student so that she can sit for the National Boards. Defendants have steadfastly refused to permit her to re-enroll for that purpose. Due to these problems, her medical education has been on hold for the past several years. (Plaintiff's second amended complaint, paras. 11–14, 16–20, 22, 25, 39–41)

Plaintiff's reliance on statements allegedly made to her attorney during settlement negotiations to prove her claim prompted defendants to seek discovery of those statements. They have: (1) subpoenaed her attorney's entire file concerning his representation of the plaintiff; (2) attempted to depose plaintiff's father, Louis Naglak, who was privy to the settlement discussions, on the subject; and (3) attempted to obtain information from plaintiff on the subject via interrogatories. All of these efforts have been rebuffed.[4]

---

it and settle her claim against the school, and Mr. Faulkner [defendants' counsel in the prior action] presented it to Mr. Scandone as a means of settling the claim, and providing a means for plaintiff's consideration by other schools *for third year transfer.*
(Plaintiff's second amended complaint, para. 17)

**4.** Attorney Scandone, acting upon instructions from Naglak, refused to comply with defendants' subpoena. Relevant portions of Scandone's deposition are reproduced in defendants' motion to compel, filed April 13, 1990, at Exhibit "D."

Plaintiff did respond to questions on the subject during her deposition. She testified:

Q. Prior to signing the agreement, did you note that that request [that plaintiff be permitted to take the National Boards] wasn't—that that terms was not included in this agreement?
A. I had been told that it wouldn't be.
. . . .
Q. Were you aware at the time you signed this agreement that no provision of it required Penn State to permit you to sit for the National Boards?
A. I was aware that I wasn't going to be allowed to take National Boards, and the only reason I signed and said OK was because I was told through Mr. Scandone that there was an equally acceptable route for my transfer into the third year position at another school. That route I was told was by taking an MSKP exam and I was told that that was equally as acceptable to any college that I would be applying to and it would put me in the same position as though I was transferring with a National Boards score. Later I found out that that was not an accurate representation of the exam's use.

Q. Representation is referred to that the National Boards are equally as acceptable—excuse, the MSKP is equally acceptable as the National Boards was conveyed to you by Mr. Scandone?
. . . .
Q. Is that correct?
A. That's how I found out.
Q. Where did Mr. Scandone claim to have gotten this information?
A. Mr. Scandone discussed it with Mr. Faulkner. Mr. Faulkner related that information to Mr. Scandone. That's all I know of that entire issue.
Q. Did Mr. Scandone say precisely what Mr. Faulkner had said to him with respect to the interchangeability of these exams?
A. Not with respect to interchangeability, no. . . . The only thing I recall is that Mr. Scandone had spoken to Mr. Faulkner and told him that I needed the National Boards for transfer purposes and Mr. Faulkner had said he would speak to Dr. Berlin. And he said after speaking to Dr. Berlin, Dr. Berlin had related to Mr. Faulkner that an MSKP was an acceptable exam and that then Mr. Faulkner offered that to Mr. Scandone and Mr. Scandone told me about this ultimate (sic) exam.

Excerpts from Naglak's deposition are reproduced in defendants' motion to compel, filed April 13, 1990, at Exhibit "G."

Although she answered deposition questions on the subject, plaintiff has refused to supply details of her discussions with Attorney Scandone in response to defendants' interrogatories. Plaintiff supplied the following response to defendants' interrogatory question 13:

Plaintiff discussed the settlement agreement with her Attorney R. Scandone who had negotiated the settlement agreement with Atty. R.

Plaintiff refuses to allow disclosure of the requested information on the grounds of attorney/client privilege. Defendants argue that plaintiff's reliance on statements made by counsel during settlement negotiations constitutes a waiver of the privilege. On that basis, defendants have moved to compel compliance with their discovery requests. Fed.R.Civ.P. 37.

Plaintiff has also filed a discovery motion. She asks the court to reconsider her motion to compel answers to her interrogatories. On March 30, 1990, Judge Rambo entered an order directing the defendants to notify the court, on or before April 16, 1990, why they should not be compelled to comply with the requests itemized in plaintiff's motion for reconsideration. Defendants filed a response to the court's order on April 13, 1990, stating that they had supplied answers to all but one of the interrogatories to which plaintiff sought a response. Defendants objected to the remaining interrogatory, question 20, which requested defendants to provide "the names and addresses of students transferring in and out of PSU/CM from 1981 to 1989 by year" and to state, for each student: (1) what school they transferred from; (2) what exam they took for the transfer; and (3) what school sponsored the student for the exam. Defendants objected to question twenty on two grounds: (1) the information sought is irrelevant and will not lead to the discovery of relevant information; and (2) the information sought is confidential and protected from disclosure to third parties by the Family Educational and Privacy Right Act, 20 U.S.C. § 1232(g) (1978).

Plaintiff has also filed a motion for leave to file an answer to defendants' reply brief filed in support of their motion for summary judgment.

M. Faulkner. The discussions so held are considered privileged as attorney client discussions. Therefore the question as to the substance of the discussion is objected to for that reason and not provided.

5. Neither party filed a statement certifying that they had conferred with counsel for the other

## II. *Discussion*

All three outstanding motions are ripe for disposition.[5] Defendants' motion to compel is granted in part and denied in part. Plaintiff waived her attorney/client privilege by filing this action, and the information sought by defendants is therefore discoverable, subject to the conditions set forth in the accompanying order. In addition to compliance with their discovery requests, defendants also seek counsel fees incurred in pursuing their motion. Defendants' request for fees is denied. Plaintiff's reliance on the attorney/client privilege raised a bona fide legal issue, and her refusal to permit release of the information sought was not unreasonable or done in bad faith.

Plaintiff's motion for reconsideration is granted in part and denied in part. We will direct Penn State to supply the information sought, although in statistical, summary form that does not disclose individual names or test scores.

Plaintiff's motion for leave to file a response to defendants' reply brief is denied.

### A. *Defendants' motion to compel*

■ Federal courts sitting in a diversity action are bound to apply state law regarding attorney/client privilege. Fed.R.Evid. 501 and *Cedrone v. Unity Savings Association,* 103 F.R.D. 423, 426 (E.D.Pa.1984). In Pennsylvania, attorney/client privilege is statutory and is set forth at 42 Pa.C.S.A. § 5928, which provides:

In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, *unless in either case this privilege is waived upon the trial by the client.*

(Emphasis supplied.)

■ To the extent that plaintiff relies upon statements allegedly made to her by

party in a good faith effort to resolve the discovery dispute, but to no avail, as is required by Local Rule 402.6. We will overlook that omission with respect to the motions currently before us, but in the future, we will require compliance with the rule.

her counsel during settlement discussions to prove her claim, she has waived her attorney/client privilege. Litigants cannot, on one hand, attempt to assert a cause of action based on statements made to them by their counsel, but seek, on the other hand to prevent disclosure of those statements. Moreover, plaintiff has waived the confidentiality of communications between her and her attorney on this issue, since she related what her attorney purportedly told her about defendants' representations and assurances in her complaint. She also answered defendants' deposition questions on the subject. (See note 4 *supra.*) Clearly, her reliance on counsel's statements to prove her claim and her own disclosure of those statements constituted a waiver of the privilege.

■ However, Naglak's waiver is a limited one, and does not permit blanket disclosure of all communications between her and her attorney. Only communications relating to her ability to transfer using the MSKP scores are waived. All other communications remain privileged and protected from disclosure absent plaintiff's consent.

■ Accordingly, defendants' request for Attorney Scandone's "entire file concerning his representation of Deborah Naglak, including but not limited to notes and correspondence, from whatever source obtained"[6] is overly broad. Plaintiff's waiver extends only to statements relating to representations made by defendants, either directly or through their counsel, as to her ability to transfer to another medical school using the scores. All other communications between her and her attorney remain privileged. We will, therefore, direct Attorney Scandone to submit to defendants only documents relating to such communications. If any such documents contain references to other matters, all such references should be deleted. Defendants may follow up their review of such documents with a deposition of Scandone. Deposition questions shall be limited exclusively to

matters pertaining to statements made to him, and in turn, related by him to Naglak, concerning her ability to use the MSKP scores for transfer purposes.

Our directive that Scandone supply defendants with copies of all discoverable file documents presumably renders moot defendants' request that plaintiff supply them with a copy of a letter dated March 5, 1985 and addressed to her parents, since a copy of the same should be included in Scandone's file. If that is not the case, plaintiff is directed to supply defendants with a copy of the entire letter, from which all non-discoverable portions (see p. 22 *supra*) have been deleted.

■ Similarly, plaintiff will be required to answer defendants' interrogatory (question 13) requesting her to "identify the individuals with whom [you] ... discussed the provisions of the settlement agreement and the time and substance of the discussion" by stating her recollection as to statements made to her by counsel regarding defendants' representations about her ability to transfer using the MSKP scores. She is not required to disclose the substance of any other settlement discussions between her and Attorney Scandone.

■ After the filing of defendants' motion to compel, plaintiff's father, Louis Naglak, filed a sworn statement supplementing his response to defendants' deposition questions. Therein, he states that he was "not privy to" conversations which his daughter may have had with her counsel regarding the settlement offer. "I cannot answer as to content as to what may have been said between Debbie and Bob [Scandone]. I understand that took place over the phone and I was not on the phone with them." When asked if those conversations were related to him, he replied: "No," and added that his daughter had not discussed with him in any detail what Scandone had told her. He went on to relate his daughter's comments regarding her dissatisfaction with defendants' refusal to include in

---

**6.** A copy of the subpoena is reproduced in defendants' motion to compel, filed April 13, 1990, at Exhibit "C."

the settlement agreement a provision relating to her ability to register for the National Boards. Louis Naglak's sworn statement is a satisfactory response to the inquiries made of him during depositions, and defendants have no reasonable basis for seeking further information from him on that subject. Therefore, we find that their objections to his refusal to answer questions asked of him during depositions are moot.

### B. *Plaintiff's motion for reconsideration*

■ Defendants contend that the information sought by plaintiff is protected from disclosure by the Educational Privacy Act. We agree that disclosure of names and addresses would violate the Act. However, that problem can be remedied by submitting the information requested in statistical, summary form, listing, e.g. the number of transferees, the exams which they took for transfer purposes, the schools which sponsored them, etc., but omitting the students' names and addresses. This will give plaintiff the data she seeks, but avoid any breach of confidentiality.

They further contend that the information plaintiff seeks is not relevant to the issues raised and will not lead to the discovery of relevant information. They base this contention on assertions that each medical school establishes its own criteria for transfer candidates, including which standardized test scores are required, and that Penn State has no control or influence over the selection criteria employed by other medical schools.

■ We disagree with defendants' contentions of irrelevancy. Granted that Penn State has no control over selection criteria employed by other schools, the information requested may well show whether Penn State knew, or reasonably should have known, what selection criteria, i.e. test scores, were employed by various schools, when it entered into the settlement agreement with plaintiff.

■ Finally, defendants suggest that plaintiff was previously provided with brochures, or other documents, stating Penn State's policies regarding transfer candidates. Those documents do not suffice. Plaintiff is entitled to compare Penn State's stated policies with the procedures employed in practice to ascertain whether the two are in conformity.

### C. *Plaintiff's motion for leave to file an answer to defendants' reply brief*

Plaintiff's motion for leave to file an answer to defendants' reply brief is denied. Plaintiff had an adequate opportunity to argue her position in her opposing brief, and there is no need for the filing of any additional briefs.

We therefore enter the following order.

### ORDER

For the reasons set forth in the accompanying memorandum, it is ORDERED that:

1. Defendants motion to compel discovery, filed April 13, 1990, is granted, in part and denied in part. The motion is granted, subject to the following conditions:

a. Attorney Scandone is directed to submit to defendants any documents in his file, including the letter to Mr. and Mrs. Louis Naglak dated March 5, 1985, concerning his representation of the plaintiff relating to communications about representations made by the defendants as to plaintiff's ability to use the Medical Sciences Knowledge Profile scores for transfer purposes. If any such documents contain references to other matters, all such references should be deleted. Defendants may follow up their review of such documents with a deposition of Scandone. Their deposition questions shall be limited exclusively to matters pertaining to statements made to him, and in turn, related by him to Naglak, concerning her ability to use the Medical Sciences Knowledge Profile scores for transfer purposes.

b. Plaintiff is directed to file a response to defendants' interrogatory 13(a). Her response shall be limited to statements related to her, and purportedly made by defendants, concerning her

ability to transfer to another medical school using scores from the Medical Sciences Knowledge Profile exam, and she shall not be required to disclose the substance of any discussions between her and Attorney Scandone relating to other matters.

c. Defendants' objection to Louis Naglak's refusal to answer deposition questions about representations made by defendants concerning plaintiff's ability to transfer to another medical school using scores from the Medical Sciences Knowledge Profile examination is denied as moot. Louis Naglak's sworn statement filed to supplement his responses to defendants' deposition questions is a satisfactory response to defendants' inquiries, and defendants therefore have no reasonable basis for seeking further information from him on the subject.

d. Defendants' request for counsel fees incurred in pursuing their motion to compel is denied.

2. Plaintiff's motion for reconsideration of her motion to compel, filed March 26, 1990, is granted in part and denied in part.

a. Plaintiff's motion is denied as moot with respect to interrogatories 11, 12, 13, 18 and 19.

b. Plaintiff's motion is granted with respect to interrogatory 20, subject to the following conditions. Defendants are directed to answer interrogatory 20 in statistical, summary form, listing, e.g. the number of transferees, the exams which they took for transfer purposes, the schools which sponsored them, etc., but omitting the students' names and addresses and any other information which would reveal the identity of any individual transferee or transferee candidate.

3. Plaintiff's motion for leave to file an answer to defendants' reply brief, filed June 20, 1990, is denied.

4. All discovery responses required by this order shall be filed within twenty (20) days of this date.