J-S47030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.L.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.M.C., | |
| Appellant | No. 820 EDA 2014 |

Appeal from the Order entered February 27, 2014,
in the Court of Common Pleas of Lehigh County,
Civil Division, at No(s): 2006-FC-0884

BEFORE: MUNDY, OLSON, and WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 25, 2014**

J.M.C. ("Father") appeals from the amended final custody order entered February 27, 2014, in which the trial court complied with the order of this Court by providing reasons on the record for entering its final custody order of April 9, 2013. The order of April 9, 2013, awarded sole legal custody and primary physical custody of Father's four children to their mother, R.L.C. ("Mother"), and awarded Father partial physical custody. The children are K.C. (born in December of 2000), M.C. (born in October of 2002), S.C. (born in November of 2003), and D.C. (born in October of 2005) ("the Children"). We affirm.

A prior panel of this Court summarized the facts and procedural history of this case as follows.

The record reveals that Mother initiated the underlying custody matter in July of 2006, approximately three months after marital separation. Upon consent of the parties, by order dated November 20, 2006, the trial court granted the parties shared legal custody, with Mother having primary physical custody, and Father having partial physical custody. Protracted custody litigation ensued between the parties, the relevant history of which we set forth as follows.

By order dated July 16, 2010, following a hearing on Father's petition to modify custody, the trial court granted Mother sole legal custody and primary physical custody, and Father partial physical custody. Seven months later, by order dated February 15, 2011, following a hearing on Father's petition for special relief in which he objected to Mother's proposed relocation with the [C]hildren to Bernville, in Berks County, the trial court granted Father sole legal and primary physical custody and Mother partial custody on alternating weekends and one weekday evening, *inter alia*.

On January 30, 2013, Mother filed a petition for modification of custody, where she alleged that the [C]hildren's paternal grandfather ("Grandfather") physically and emotionally abused the two youngest children, S.C. and D.C., by hitting, slapping, pushing, throwing, and kicking them. In addition, Mother alleged that Father and Grandfather curse at the [C]hildren and call them names. Further, Mother alleged that Father punches himself on both sides of his face in front of the [C]hildren and utters curse words about her. Mother requested sole legal and primary physical custody.

Related to Mother's petition for modification is a Protection From Abuse ("PFA") order issued by the court against Grandfather on January 29, 2013, which granted Mother physical custody of the [C]hildren, following a hearing on Mother's PFA action on behalf of the [C]hildren. Father was not a party to the PFA action.

In light of this procedural posture, on February 15, 2013, the trial court held an emergency hearing so that Father could testify with respect to what actions, if any, he has taken to address the [C]hildren's safety in his home. During the emergency hearing, the court incorporated into the record the notes of testimony from the PFA hearing on January 29, 2013. In addition, the trial court interviewed all of the [C]hildren, and Father and Mother

testified on their own behalf. At the conclusion of the testimony, the court issued an *interim* order granting the parties shared legal custody, Mother primary physical custody, and Father partial custody on alternating weekends, *inter alia*.

On March 14, 2013, and April 2, 2013, the court held a custody trial on Mother's petition for modification, during which the following witnesses testified: Dana Greene, a licensed professional counselor who provides counseling to the [C]hildren; Elaine Civic, the [C]hildren's school nurse; Roseanne B. McGinn, a licensed psychologist who treats Father; Taryn Bielecki, S.C.'s teacher; Patricia Johnson, the [C]hildren's school counselor; Pamela Caton, the kindergarten teacher of K.C., M.C., and D.C.; Donald M. McMullen, Mother's paramour, with whom she resides; Mother; and Father. In addition, the trial court incorporated into the record the notes of testimony from the emergency custody hearing on February 15, 2013.

By order dated April 9, 2013, and entered on April 10, 2013, the trial court granted Mother's petition for modification. The court granted Mother sole legal custody and primary physical custody, and Father partial physical custody on alternating weekends, *inter alia*. In addition, the court granted Mother's request to transfer the [C]hildren to the Hamburg Area School District, in Berks County, for the academic year beginning in August or September of 2013. Further, on April 9, 2013, the court placed its reasoning for the custody award on the record in open court. Father timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

*R.L.C. v. J.M.C.*, 93 A.3d 514 (Pa. Super. 2013) (unpublished memorandum), at 1-4 (footnotes and citations to the record omitted).

This Court's prior memorandum entered on December 19, 2013 focused upon the trial court's examination of Mother's petition under the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340. Our memorandum acknowledged that the court delineated the reasons for its April 9, 2013 custody determination on the record at the time it issued its

order. *See* 23 Pa.C.S.A. §§ 5323(d) ("The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order."). We noted, however, that the court considered at length the relocation factors set forth in section 5337(h)[1] but did not consider the best interest

_____

[1] Section 5337(h) of the Act provides:

> **(h) Relocation factors.**--In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:
>
> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

factors listed in section 5328(a).[2]  The trial court evaluated Mother's petition

as a relocation matter because she used to live in Lehigh County but now

---

 (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

 (8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

[2] In determining the bests interests of a child when awarding custody, the trial court must consider the 16 factors set forth in § 5328(a) of the Act, which states:

**§ 5328. Factors to consider when awarding custody**

(a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

 (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

resided in Berks County. We concluded that the trial court committed an error of law because the proceeding was not before the court on an objection to a proposed relocation.[3] **See** 23 Pa.C.S.A. § 5337(g). Therefore, given the precise procedural posture of the case, we said it was incumbent upon the trial court to consider the best interest factors set forth in section 5328(a). We therefore remanded this matter to allow the trial court to set forth its consideration of the best interest factors found in that provision.[4]

On February 27, 2014, the trial court entered its amended final custody order. The trial court attached to the order its assessment of the section 5328(a) best interest factors. The dispositional aspects of the April 9, 2013 order remained unchanged. Father again timely filed a notice of

---

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

[3] Mother's petition requested modification of an existing custody order, *i.e.* the order of February 15, 2011, which granted Father sole legal and primary physical custody of the Children. Moreover, we noted specifically that Mother was not seeking to relocate. In fact, the record established that Mother had resided in Berks County since December 2010.

[4] We also observed that even if the trial court properly considered the relocation factors in section 5337(h), it nevertheless committed an error of law (given the modification of the parties' custody order) by failing to consider the best interest factors set forth in section 5328(a). **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (vacating and remanding order granting father permission to relocate with parties' child and entering a revised custody schedule where the trial court failed to consider both the section 5337(h) relocation factors and the section 5328(a) best interest factors).

appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father now raises the following issues for our review.

1. Did the trial court err or abuse its discretion by incorporating the record of, and relying on, testimony from a proceeding to which Father was not a party?

2. Did the trial court err or abuse its discretion by limiting the testimony of Dana Greene[,] M.Ed.?

3. Did the trial court err or abuse its discretion in analyzing the weight of the evidence presented?

4. Did the trial court err or abuse its discretion in making factual determinations?

5. Did the trial court err or abuse its discretion in making legal conclusions?

Father's Brief at 4 (suggested answers omitted). [5,6]

---

[5] In his brief, Father presents his third, fourth, and fifth issues in a single argument section.

[6] In the argument section of Father's brief, he raises additional claims that are not listed in the statement of questions involved in his brief, and that were not included in his concise statement of errors complained of on appeal. Specifically, Father posits that the trial court lacked personal jurisdiction over him during the PFA proceedings, and thus was not permitted to enter an order modifying his custody of the Children. Father's Brief at 15-16. Father suggests that he did not receive notice that custody of the Children could be modified as a result of the PFA hearing, and that he was denied an opportunity to be heard. *Id.* at 16-19. Father argues that the trial court was not permitted to alter the prior custody order without a petition to modify custody before it, and that the trial judge should have recused himself *sua sponte*, because of bias against Father. *Id.* at 17-25. These claims are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions

We consider Father's issues mindful of the following.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012), *quoting* *A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa. Super. 2010).

Father's first issue is that the trial court erred or abused its discretion by incorporating the testimony from the prior PFA hearing involving Grandfather during the emergency hearing of February 15, 2013, in violation of his right to due process. *Id.* at 11, 15-26. In response, the trial court explains that Father has failed to preserve this claim for our review. *See* Trial Court Opinion, 4/14/2014, at 4. The trial court directs our attention to the following exchange between the court and Father's attorney.

---

involved or is fairly suggested thereby."); *Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted).

-9-

[The trial court:] So my thought was that we incorporate this record [from the PFA hearing], and now that Father has had a chance to read the transcript, we would now interview the children again and let [Father's counsel] Attorney Dougherty ask whatever questions she asks.

In other words, we would not go back and redo what is done and take them through all of that and just let Attorney Dougherty ask them any questions. And then if [Mother's counsel] Attorney Eidelman has any questions based on Attorney Dougherty's question, she will be allowed to ask those, but we would start with that.

Is that acceptable?

Ms. Dougherty: Yes, Your Honor.

N.T., 2/15/2013, at 7-8.[7]

After reviewing this portion of the transcript in context, we agree that

Father has waived his claim. It is well-settled that,

[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010), *quoting* **Thompson v.**

**Thompson**, 963 A.2d 474, 475–476 (Pa. Super. 2008); *see also* Pa.R.A.P.

---

[7] Prior to this discussion, the trial court stated incorrectly that the PFA hearing took place on "January 29, 2012," rather than January 29, 2013. It does not appear that there was any confusion as to which hearing was referenced in the trial court's statement.

302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Here, Father's attorney did not object to the trial court's suggestion that the PFA testimony be incorporated into the record. To the contrary, Father's counsel explicitly agreed to this proposal. Thus, the issue is waived, and no relief is due.

Father next claims that the trial court erred by limiting the testimony of the Children's counselor, Dana Greene, during the custody hearing on March 14, 2013. Father's Brief at 27-35. Father argues that the trial court held incorrectly that he could not question Ms. Greene about her counseling sessions with the Children. ***Id.***

> Our standard of review is well-settled:
>
> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

***Phillips v. Lock***, 86 A.3d 906, 920 (Pa. Super. 2014), *quoting* ***Stumpf v. Nye****,* 950 A.2d 1032, 1035–36 (Pa. Super. 2008), *appeal denied,* 962 A.2d 1198 (Pa. 2008).

Instantly, the trial court concludes that the Children's communications to Ms. Greene were covered by the psychiatrist/psychologist privilege. The relevant statute provides as follows.

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944.[8]

The trial court explains that the Children did not "put their mental status into issue," as in other cases where the psychiatrist/psychologist privilege has been found to be waived, and that, even if the court were not required to limit Ms. Greene's testimony, it "would have found that the value of any potential rebuttal testimony by Dana Greene, M.Ed. did not justify breaching the confidentially of the children's communications with their therapist." Trial Court Opinion, 4/14/2014, at 6-8, *citing* **Gormley v. Edgar**, 995 A.2d 1197, 1204 (Pa. Super 2010). The trial court also states that, because of their age, the Children could not waive confidentiality without consent of a parent or guardian, and points out that Mother did not

---

[8] We note that Ms. Greene did not specify that she is a psychiatrist or a psychologist in her testimony, but identified herself as a "licensed professional counselor," and a certified "drug and alcohol counselor." N.T., at 3/14/2013, at 14.

consent to waive confidentiality. Trial Court Opinion, 4/14/2014, at 6-8, *citing* 55 Pa. Code § 5100.33(a).[9]

Father makes no effort to challenge the applicability of 42 Pa.C.S.A. § 5944 or 55 Pa. Code § 5100.33(a) to the present case. Instead, Father concedes that the Children's statements to Ms. Greene were privileged, and that "the Children were too young to competently waive this privilege knowingly and voluntarily." Father's Brief at 28. Nonetheless, Father contends that the privilege was waived because Mother and the Children testified about their sessions with Ms. Greene "with Mother's counsel present and without objection." ***Id.***

---

[9] 55 Pa. Code § 5100.33(a) provides, in relevant part:

> When a client/patient, 14 years of age or older, understands the nature of documents to be released and the purpose of releasing them, he shall control release of his records. . . . In the event that the client/patient is less than 14 years of age or has been adjudicated legally incompetent, control over release of the client's/patient's records may be exercised by a parent or guardian of the client/patient respectively.

This provision applies "to records of persons seeking, receiving or having received mental health services from any facility as defined in" the Mental Health Procedures Act (MHPA), 50 P.S. §§ 7101–7503. 55 Pa. Code § 5100.31(a). The MHPA "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons," and defines "facility" as "any mental health establishment, hospital, clinic, institution, center, day care center, base service unit, community mental health center, or part thereof, that provides for the diagnosis, treatment, care or rehabilitation of mentally ill persons, whether as outpatients or inpatients." 50 P.S. § 7103.

Father asserts first that Mother waived the privilege by reading a portion of a petition for special relief on the record during the prior PFA hearing. Father's Brief at 28-29, 31-35. Father also argues that, even if the relevant privilege were not waived in its entirety, it should be found to be waived in part. *Id.* at 30-32. According to Father, his trial counsel "did not want to open *all* the records of the Children's therapy, but only those records specific to what had already been testified to by the Children *to offer relevant evidence to refute the testimony*." *Id.* at 30 (emphasis in original). Alternatively, Father states that the privilege should be lost due to "subject matter waiver." *Id.* at 32-33.

Father is not entitled to relief, as he has failed to advance any claim that the Children's mental health has been placed at issue in the instant case. When interpreting the scope of the statutory psychiatrist-psychologist privilege found at 42 Pa.C.S.A. § 5944, this court has explained:

> [Section 5944] pertains only to confidential communications between psychiatrists or psychologists and their patients/clients that were made in the course of treatment, not to all records and documents regarding mental health treatment. *Gates v. Gates*, 967 A.2d 1024 (Pa. Super. 2009). "The purpose of the psychologist/patient privilege is to aid in the effective treatment of the client by encouraging the patient to disclose information fully and freely without fear of public disclosure." *Zane v. Friends Hospital,* [836 A.2d 25, 33 (Pa. 2003)]. The privilege is based upon a strong public policy designed to encourage and promote effective treatment and to insulate the client's private thoughts from public disclosure. *Kalenevitch v. Finger*, 595 A.2d 1224 (Pa. Super. 1991). This Court holds this privilege in the highest regard, recognizing that such confidential statements are the key to the deepest, most intimate thoughts of an individual seeking solace and treatment. However, such

confidential communications are only protected to the same extent as those between an attorney and his client. The privilege is not absolute; it may be waived.[10] Our Commonwealth Court in **Rost v. State Board of Psychology**, 659 A.2d 626, 629 (Pa. Cmwlth. 1995), held that the privilege may be waived in civil actions "where the client places the confidential information at issue in the case." In those circumstances, the client himself or herself has turned the key to voluntarily unlock those privileged communications.

**Gormley**, 995 A.2d at 1204 (footnote in original; parallel citations omitted).

While Father claims that we should find waiver, at least in part, because of the Children's testimony "about their sessions with Dana Greene, M.Ed. in the context of their therapy," Father's Brief at 32, Father fails to direct us to any such testimony. It is not this Court's responsibility to act as Father's attorney and comb through the record in an effort to support his issues. **Irwin Union Nat. Bank and Trust Co. v. Famous**, 4 A.3d 1099, 1103 (Pa. Super. 2010), *appeal denied*, 20 A.3d 1212 (Pa. 2011) (citing **Commonwealth v. Mulholland**, 702 A.2d 1027, 1034 n. 5 (Pa. 1997)). To the extent Father claims that some portion of the Children's testimony waived the relevant privilege, it is Father's duty to cite to that testimony so that we can consider it in determining whether he is entitled to relief. Father

---

[10] The statutory psychiatrist-psychologist/patient-client privilege, 42 Pa.C.S. § 5944, does not expressly mention "waiver." However, it does provide that confidential communications between psychiatrists/psychologists and their clients will be treated in the same way as communications subject to the attorney-client privilege. The statutory provision governing the attorney-client privilege in civil actions, 42 Pa.C.S. § 5928, expressly states that the privilege may be waived.

has not overcome the evidentiary privilege found in section 5944 based upon any claim resting upon the Children's testimony in the instant proceedings.

Father also argues that Mother's reading of the petition for special relief opened the door to otherwise privileged testimony from Ms. Greene. **See** Father's Brief at 28-34. Specifically, Father quotes the following passage from Mother's testimony at the PFA hearing in support of his claim that disclosure of the content of the Children's statements to Ms. Greene waived confidentiality under section 5944:

> [R.C]: When [the Children] have told their therapist, Dana Green, that they are hit by their [F]ather and grandfather, Father physically abuses them for having done so. The [C]hildren are now afraid to tell their therapist about the abuse because of retaliation by Father afterwards.

Father's Brief at 34, *quoting* N.T., 1/29/13, at 48.

We fail to see how the quoted passage placed the mental health of the Children at issue in the present custody dispute. Although the mental well-being of children is always a concern in custody proceedings, it was the physical safety of these Children (and specifically their safety while in Father's custody) that was the paramount focus of the trial court's inquiry. We also reject Father's claim that Mother's testimony supported a limited waiver under ***Naglak v. Pennsylvania State University***, 133 F.R.D. 18 (M.D. Pa. 1990). In ***Naglak***, the trial court held that the plaintiff waived her attorney/client privilege because she disclosed statements allegedly made by counsel during settlement negotiations and relied upon those statements to

prove her claim. *Id.* at 22-23. Here, there were many instances of abuse referenced in the testimony before the trial court. Thus, the details surrounding the Children's statements to Ms. Green regarding abuse suffered at the hands of their Father and grandfather, by themselves, were not a central component in the custody claims advanced by Mother. These confidential statements between the Children and their therapist were not "placed at issue" by Mother in the custody case. Instead, the mere fact that the Children reported physical abuse was what was important. There is no basis for setting aside the privilege and permitting Father *carte blanche* access to the Children's discussions with Ms. Green. Hence, Mother's testimony did not waive the Children's privilege under section 5944.

Father's third claim is that numerous factual determinations made by the trial court are either contradicted or unsupported by the record. Father's Brief at 35-39. First, Father challenges the court's finding that "[t]he Children's testimony does not evidence any kind of coaching." Father argues as follows.

> While not articulated by the trial attorney, the testimony of Patricia Johnson is devastating to this finding of fact. Judge Johnson took testimony from the three boys on January 29[th] 2013. After this testimony and before the next court date, they met with Patricia Johnson and told her a different story. By the next court date, the story changed back to the version they told the judge and attorneys in this case. This is evidence of coaching on the record. This evidence concerns an evolution of the stories the children are telling while under the care of Mother in this case. Father testified to [D.C.]'s telling Father that [Father] "lied in Court." [D.C.] was not in [c]ourt when Father testified; meaning the only source of this knowledge in the

> Child's mind is Mother. Additionally the [C]hildren often threatened Father with legal action, "Oh, we'll call the judge . . . We'll have the police here again . . . I'm going to call my lawyer." The only way these Children could have assimilated this language is from Mother, as the threats were always directed against Father. The evolution of the testimony of the Children from 1-29-2013 to 2-15-2013, after two weeks with Mother to prepare, is also evidence of coaching . . . .

Father's Brief at 35-36.

The trial court indicates that it considered Father's claim that Mother coached the Children, but explains that it did not find this assertion persuasive. Amended Final Custody Order, 2/27/2014, at Appendix pgs. 2-3. As noted **supra**, the trial court was free to weigh the evidence and to make credibility determinations as it saw fit. **V.B.**, 55 A.3d at 1197. We discern no abuse of discretion.

Father next asserts that the finding that he has "physically injured [S.C.] and [D.C.]" is also contradicted by the record. Father's Brief at 36. Father, however, makes no effort to explain how this finding was contradicted by the record, and instead argues that the trial court's April 9, 2013 opinion was "influenced by the abuse found" during the prior PFA hearing, and that the trial court "fail[ed] to properly focus on the present danger of abuse, which is more in line with Pennsylvania jurisprudence." **Id.** at 37. Father's contention that the trial court abused its discretion by relying excessively on acts of past abuse, rather than the danger of present abuse, is not contained in either Father's statement of questions involved or his

concise statement. Therefore, it is waived. **See** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2116(a); **Krebs**, 893 A.2d at 797.

Finally, Father lists 19 different factual findings and legal determinations that he claims are unsupported by the record. Father, however, has not developed and advanced individualized challenges to these assessments nor has Father detailed how the factual record refutes these declarations. We again emphasize that it is not this court's duty to scour the record in search of support for Father's claims. **Irwin Union Nat. Bank and Trust Co.**, 4 A.3d at 1103. To the extent Father argues that it was error for the trial court to determine, for example, "[t]hat no evidence was presented as to the availability of extended family," Father's Brief at 38, it is Father's obligation to direct us to where the trial court actually made that finding, and to any evidence of record showing that this was an erroneous determination. Father has made no effort to do so here, and he is not entitled to relief.

Moreover, even if we were to conclude that one or more of the listed findings are without the support in the record, we would still affirm the subject custody order. A review of the Children's testimony in this case reveals ample support for the trial court's conclusion that Father is abusive and behaves erratically, and that Mother should be awarded primary custody. We therefore discern no error in the trial court's application of the best interest factors listed in section 5328(a). Thus, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/25/2014</u>